UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALVIN RAMIREZ,<br><br>Plaintiff,<br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-02238-MMD-DJA<br><br>ORDER |

## I. SUMMARY

Plaintiff Alvin Ramirez sued Defendants Las Vegas Metropolitan Police ("LVMPD") and Corrections Officer ("CO") Nchong Enokenwa, Sergeant Charles Savino, Officer Theodore Foth, Officer Garrett DePaulis, and Officer Lukas Turley (collectively, "Defendants") after he was arrested while he was walking on the Las Vegas strip and detained at the Clark County Detention Center ("CCDC"). (ECF No. 22 ("Amended Complaint").) Plaintiff alleges that he was falsely arrested and subjected to excessive force as an arrestee. (*Id.*) Before the Court is Defendants' motion for summary judgment. (ECF No. 28 ("Motion").)[1] For the reasons explained herein, the Court grants the Motion as to Plaintiff's excessive force claims and denies it as to the remaining claims.

## II. BACKGROUND[2]

Plaintiff's arrest stems from an incident that occurred on July 20, 2024. (ECF No. 28-2 at 25.) Plaintiff is a Black-passing Hispanic man who speaks both Spanish and English. (ECF Nos. 22 at 3; 28-2 at 40-41.) Plaintiff was at the Marquee Nightclub, when someone spilled a drink on him, and he left to avoid an altercation. (ECF No. 28-2 at 25,

[1]Plaintiff responded (ECF No. 30 ("Response")) and Defendants replied (ECF No. 35 ("Reply")).

[2]The following facts are undisputed unless otherwise noted.

31.) Plaintiff was "power walking" toward his bus home and saw people walking directly toward him. (*Id.* at 34.) He raised his arms and pretended to scratch his head, which caused him to contact[3] at least one of the individuals. (*Id.*) These individuals were LVMPD officers in plainclothes[4] from LVMPD's Flex team responsible for patrolling the Strip: non-party Lieutenant McMurty, Sergeant Savino and Officer DePaulis ("Plainclothes Officers")[5]. (*Id.* at 35; ECF Nos. 28-3 at 43-45; 28-8 at 3; 30-6 at 29-30.)

Sergeant Savino testified in his deposition that Plaintiff "plowed through the crowd, physically contacting and pushing Lieutenant McMurty," and while the area was crowded, there was sufficient room for Plaintiff to avoid contact. (ECF No. 30-3 at 41, 53-54.) According to the arrest report, Sergeant Savino directed Officers Foth and Turley to stop Plaintiff because Plaintiff had "used physical force against them." (ECF No. 28-8 at 3.) Officers Foth and Turley approached Plaintiff and notified Plaintiff that the individuals he had run into were officers. (ECF No. 28-2 at 35.) Officers Foth and Turley checked Plaintiff's identification, searched him, and handcuffed him, and shortly during or after the search of Plaintiff, turned on their body cameras so video footage[6] is available for the rest of the encounter. (ECF Nos. 30-5 at 23; 30-6 at 21-22.)

---

[3]The parties dispute the nature of the contact between Plaintiff and the Plainclothes Officers, but not that contact occurred.

[4]The Court notes Sergeant Savino's deposition testimony that he was working in a "covert capacity" and explains that in plainclothes an officer may wear a police shirt with a badge insignia, whereas in covert capacity, an officer has his "firearm, less lethal option, the badge, handcuffs" "concealed in a manner that would not be identifiable to a civilian or a pedestrian." (ECF No. 28-3 at 29-30.) However, the Court uses the term "plainclothes," because both parties use it throughout the briefing.

[5]The Plainclothes Officers did not have body cameras pursuant to LVMPD policy. (ECF No. 30-3 at 31-32.)

[6]Defendants manually filed a flash drive containing seven separate videos as Exhibit F. (ECF Nos. 28-1 at 1-2; 29.) The Court directs Defendants to consult the Local Rules pertaining to exhibits. *See* LR IC 2-2(a)(3) (Exhibits and attachments "must be attached as separate files"). Because Defendants have incorrectly filed all video exhibits as a single exhibit, the Court will describe the video exhibits it cites as follows: Theodore Foth 5-48 ("Foth Video 2"); Theodore Foth 1-09 ("Foth Video 3"); Lukas Turley 2-47 ("Turley Video 2"); and CCDC Use of Force Video ("CCDC Video").

Plaintiff explained that he had been in an altercation in the club and said, "I'm sorry that I did that, my bad." He stated, "I'm angry, I was just angry." (ECF No. 28-7 at 00:35-01:03 (Foth Video 3).) Foth testified that Plaintiff was not aggressive and "was very apologetic." (ECF No. 28-6 at 30.) During the search incident to arrest, arresting officers found some of Plaintiff's prescription pills for Oxycodone Hydrochloride, a controlled substance, which were not in a bottle on his person. (ECF Nos. 28-5 at 53; 28-2 at 38-39; 28-8 at 2-3.) Plaintiff explained that he had a prescription for the pain medication. (ECF No. 28-7 at 01:14-01:25 (Turley Video 2).) Plaintiff asked why he needed to go to jail, and Turley responded that the way he ran into the police officers could have been viewed as a challenge to a fight. (*Id.* at 2:05-3:34 (Turley Video 2).) Plaintiff was subsequently arrested for disorderly conduct and for possession of a controlled substance. (ECF Nos. 28-8 at 2.)

Plaintiff was then transported to the CCDC for booking, where he arrived speaking English and did not ask for an interpreter. (ECF No. 28-2 at 40-41.) The CCDC Video shows the entire incident that follows, though there is no audio. Plaintiff was in a waiting area, and CO Enokenwa led him behind a screen to search for contraband. (ECF Nos. 28-2 at 42; 28-7 at 2:07:36-02:08:13 (CCDC Video).) Plaintiff testified in his deposition that he "just had this funny vibe about [Enokenwa]" and he decided, "I'm not going to engage in any conversation with this guy" and decided to pretend that he didn't know English and only speak in Spanish. (ECF No. 28-2 at 42-44.) Plaintiff tells people that he does not speak English when he does not want to talk to them. (*Id.* at 33.)

CO Enokenwa instructed Plaintiff to open his mouth and run his index fingers at his gumline so he could check for contraband. (*Id.* at 45; ECF No. 28-9 at 42.) Plaintiff, who had been speaking in English up to this point, started speaking Spanish and told CO Enokenwa in English that he did not understand. (ECF No. 28-9 at 43-44.) CO Enokenwa pantomimed his instructions to Plaintiff. (ECF Nos. 28-9 at 44; 58-7 at 2:53-03:10 (CCDC Video).) Plaintiff appears to briefly put one finger in his mouth without showing his gums,

then touch two fingers to his closed mouth, while shrugging and gesturing.[7] (ECF No. 58-7 at 02:53-03:10 (CCDC Video).) CO Enokenwa testified that he decided to place Plaintiff in hand restraints and call a supervisor, and he instructed Plaintiff to get up. (ECF Nos. 28-9 at 44-47.) The video footage shows CO Enokenwa, standing, grabbing Plaintiff's left wrist and elbow, and almost immediately maneuvering Plaintiff into the ground, which Plaintiff hit headfirst, and was put in restraints. (ECF No. 28-7 at 3:12-4:02 (CCDC Video).) Plaintiff testified that he went unconscious and came to with a gash on his forehead. (ECF Nos. 28-2 at 48-50; 30 at 8.) All charges from this night were dropped. (ECF No. 28-2 at 39-40.)

Separately from this incident, on May 15, 2024, non-party Kevin Menon, a then-LVMPD Sergeant, was reported by a fellow officer to LVMPD's Internal Affairs Bureau ("IAB") for engaging in "possibly illegal tactics" while supervising a different Flex team patrolling the Strip. (ECF No. 28-13 at 4, 6.) LVMPD relieved Menon of duty the following day and commenced an administrative, then criminal, investigation. (*Id.* at 4.) Menon was eventually arrested and charged for crimes occurring between April 26, 2024 and May 10, 2024. (*Id.*) Menon would instigate physical encounters with citizens that led to knowingly false arrests. (ECF No. 28 at 9.) For example, on May 3, 2024, Menon "shoulder checked" a civilian on the Strip while in plainclothes and escalated the exchange. (ECF No. 28-13 at 9-10.) Afterward, Menon instructed officers to fabricate the report by stating that this event involved a civilian, rather than Menon. (*Id.* at 10.) IAB

---

[7]Plaintiff's statement of facts states that "[v]ideo footage shows Plaintiff complying with Defendant Enokenwa's instructions to run his fingers through his gums during the search procedure" and that Defendant Enokenwa "admitted this fact upon reviewing the video evidence during his deposition," citing to Enokenwa's deposition testimony. (ECF No. 30 at 13 (citing ECF No. 30-18 at 68-69, 105-106).) But this misstates both the video and Enokenwa's testimony:

> Q As we watched the video just now, [Plaintiff] did actually comply and run both fingers up to his gumlines; correct?
>
> A No.

(ECF No. 30-18 at 69.)

interviewed officers and citizens involved in the incidents, but the investigation led to charges against Menon only. (*Id.* at 5.) Pursuant to a plea agreement, Menon pled guilty on May 28, 2025, to one count of oppression under color of office, one count of subornation of perjury, one count battery on a protected person, and one count of oppression under color of office with immediate threat or use of physical force.[8]

Arising from these events, Plaintiff brings seven claims: (1) excessive force under 42 U.S.C. § 1983 against Enokenwa; (2) excessive force under the Nevada Constitution against Enokenwa and LVMPD; (3) battery against Enokenwa and LVMPD; (4) false arrest under 42 U.S.C. § 1983 against Savino, Foth, DePaulis, and Turley ("Arresting Officers"); (5) false arrest under the Nevada Constitution against Arresting Officers and LVMPD; (6) state law false arrest and false imprisonment against Arresting Officers and LVMPD; and (7) *Monell* failure to train against LVMPD. (ECF No. 22 at 6-15.)

## III. DISCUSSION

Defendants seek summary judgment on all of Plaintiff's claims. Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). All justifiable inferences should be drawn in the non-movant's favor. *Id.* at 255.

---

[8] *See State of Nevada v. Kevin Hendrick Menon*, Case No. C-24-386532-1. The Court takes judicial notice of the online docket records of the Eighth Judicial District Court, accessible at https://perma.cc/Y5GT-CXTV.

### A. False Arrest Claims

Defendants assert that Plaintiff's fourth claim for false arrest under section 1983, fifth claim for false arrest under the Nevada Constitution, and sixth claim for common law false arrest and false imprisonment against the Arresting Officers fail because Arresting Officers had probable cause to arrest Plaintiff. (ECF No. 28 at 16-19.) Plaintiff counters that the central factual dispute is whether the contact between Plaintiff and the Plainclothes Officers occurred as alleged. (ECF No. 30 at 28.)[9] The Court agrees with Plaintiff.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (9th Cir. 2004). Accordingly, probable cause is a defense to false arrest claims brought under section 1983 and the Nevada Constitution. *See Dubner v. City and Cnty. Of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."); *see also Alexander v. Las Vegas Metro. Police Dep't*, No. 2:24-CV-00074-APG-NJK, 2026 WL 579356, at *15 (D. Nev. Mar. 2, 2026) (treating claims brought under the Fourth Amendment and Article I, § 18 of the Nevada Constitution in the same manner because the latter is "substantively identical" to the former). Probable cause is also a defense to a false arrest claim brought under the Nevada state law. *See Grover v. Clark Cnty.*, 625 P.2d 85, 86 (Nev. 1981) (finding that "summary judgment was properly granted as to the [false arrest] claim predicated on the arrest for lack of probable cause"). Probable cause exists where, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability

[9]Plaintiff also argues that the officers' failure to activate their body cameras creates a presumption of missing evidence, the discovery of Plaintiff's prescription medicine demonstrates that the officers lacked probable cause, and Plaintiff's statements to police officers may be excluded at trial. (*Id.* at 28-30.) However, the Court need not reach these arguments to resolve the Motion.

that [the defendant] had committed a crime." *United States v. Potter*, 895 F.2d 1231, 1233-34) (9th Cir. 1990) (internal citation and quotation marks omitted). Probable cause "must exist *before* an officer undertakes a search incident to arrest." *Id.* at 1934.

The undisputed facts indicate only that Plaintiff made contact with at least one of the Plainclothes Officers and was subsequently arrested for disorderly conduct under Clark County Ordinance 12.33.010, which makes it unlawful for a person to, among other actions, "incite a disturbance" or "challenge another person to a fight." (ECF No. 28 at 17-18.) However, the reason for and quality of that contact—and accordingly whether the contact was sufficient for probable cause—is greatly disputed. (ECF Nos. 28-2 at 34 (Plaintiff's deposition testimony that he pretended to scratch his head and "[the Plainclothes Officers] hit his elbow"); 30-15 at 44-45 (Savino's deposition testimony stating that Plaintiff and McMurty "physically [] came into contact upper body to upper body, between the shoulder and the extension of the arms"); 30-23 at 27 (Depaulis's deposition testimony that Plaintiff "walked right in front of [Savino]" and used "both of his hands" to push Savino over, so DePaulis had to catch Savino to prevent them both from "falling on the ground").) Officers Foth and Turley did not personally see this interaction. To enact the arrest, Turley relied upon Sergeant Savino and Lieutenant DePaulis's statements that Plaintiff "pushed through" them (ECF No. 30-5 at 45), and Foth relied solely upon Sergeant Savino's statement that he was shoved (ECF No. 30-6 at 29). Based on the record before it, the Court cannot find that Defendants have met their initial burden of demonstrating that there is no dispute of material fact. Reviewing the evidence and drawing all justifiable inferences in Plaintiff's favor, a reasonable jury could find that the Arresting Officers lacked probable cause to arrest Plaintiff, given the factual dispute as to the severity and intentionality of the contact that occurred in a crowded setting on the Strip.

Defendants argue that Plaintiff cannot allege that the Arresting Officers used an illegal arrest tactic under the Ninth Circuit's "sham affidavit" rule because Plaintiff did not contest his disorderly conduct arrest when he was arrested, he did not bring false arrest

claims in his initial complaint, and Plaintiff "confirmed his arrest was lawful at his deposition" because "he had no complaints about the then-unnamed Arresting Officers." (ECF No. 28 at 18 (citing ECF No. 28-2 at 39).) Defendants' arguments are unpersuasive for several reasons. First, Plaintiff's statements to Arresting Officers around the time of his arrest—for example, that he was "wrong"—do not constitute an admission that Defendants had probable cause. Second, Defendants mischaracterize Plaintiff's deposition testimony. They appear to cite to the following:

> Q: And you don't have complaints about the way [Arresting Officers] treated you, do you?
>
> A: No.

(ECF No. 28-2 at 39.) But lack of complaint about the way Plaintiff was treated by certain Defendants does not "confirm[] his arrest was lawful," as Defendants represent. Third, Plaintiff's initial complaint has no bearing in this Motion, because the Amended Complaint is the operative complaint. And finally, the Ninth Circuit's "sham affidavit" rule does not apply, where, as here, Plaintiff is not "contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

Defendants additionally offer a sparse argument that Arresting Officers are entitled to qualified immunity on Plaintiff's section 1983 false arrest claim. Indeed, the entire argument is two sentences:

> At a minimum, the Arresting Officers are entitled to qualified immunity on Ramirez's § 1983 false arrest claim. There is no clearly established law prohibiting an officer from performing an arrest on an individual who admits to the infraction and says they "deserve" the arrest.

(ECF No. 28 at 19.) Plaintiff did not address this argument in his Response and Defendants assert in their Reply that Plaintiff has waived it. (ECF No. 35 at 8.) The Court declines to find waiver, however, given that Defendants barely addressed their own argument. Moreover, the Court notes that Defendants again misconstrue Plaintiff's false arrest claim—the issue is whether Defendants had probable cause to arrest Plaintiff—and there is clearly established law prohibiting officers from performing an arrest without

probable cause. *See Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 ("It is well established that an arrest without probable cause violates the Fourth Amendment. . . .") (citation modified) (9th Cir. 2011).

In sum, the Court finds that Defendants have failed to meet their initial burden as to probable cause and the Court denies their Motion as to Plaintiff's fourth, fifth, and sixth claims.

**B. Excessive Force and Battery Claims**

Defendants next argue that Plaintiff's excessive force claims—claims one and two—and state law battery claim—fail because under the factors discussed in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), CO Enokenwa used reasonable force on Plaintiff.[10] (ECF No. 28 at 19-24.) Plaintiff counters that CO Enokenwa did not use reasonable force under the standard set in *Graham v. Connor*, 490 U.S. 386 (1989) and points to evidence of unreasonableness, including LVMPD's use-of-force policies, CO Enokenwa's prior conduct, and Plaintiff's expert opinion. (ECF No. 30 at 30-34.) Defendants counter that Plaintiff cites the wrong legal standard and cannot rely on this evidence at trial. (ECF No. 35 at 8-15.) The Court agrees with Defendants and finds that Defendants are entitled to summary judgment as to Plaintiff's excessive force claims and state law battery claim.

The Fourteenth Amendment protects pretrial detainees from excessive force. *See Kingsley*, 576 U.S. at 400-02; U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . ."). A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97; *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016). Factors relevant to whether force was objectively unreasonable include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

---

[10]Defendants also argue that CO Enokenwa is entitled to qualified immunity for the section 1983 excessive force claim. (ECF No. 28 at 24-25.) The Court need not reach this argument.

*Kingsley*, 576 U.S. at 397. "The most important factor is whether the suspect posed an immediate threat." *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022). Moreover, "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. Absent unreasonable force, excessive force claims brought under the Nevada Constitution and state law battery against a police officer fail. *See Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law [] battery by a police officer thus mirrors the federal civil rights law standard. . . ."); *Est. of Sauceda v. City of N. Las Vegas*, 380 F. Supp. 3d 1068, 1088 (D. Nev. 2019) (explaining that a battery claim raised against a police officer cannot survive absent unreasonable force); *see also DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:23-CV-00580-APG-EJY, 2024 WL 4189939, at *15 (D. Nev. Sept. 12, 2024) (applying the same standard to excessive force claims brought under the U.S. Constitution, Nevada Constitution, and state common law (battery)).

The Court finds that Defendants have shown that there was no dispute of fact that CO Enokenwa's use of force was objectively reasonable under the *Kinglsey* factors. The first and sixth *Kingsley* factors favor Enokenwa: Plaintiff resisted Enokenwa by pretending not to understand Enokenwa's instructions and failing to comply with orders. (ECF No. 28-2 at 42-44.) Enokenwa administered a "empty hand takedown," which under CCDC's Use of Force Policy 3.110, is a low level of force tactic appropriate for a compliant or obstructive subject. (ECF Nos. 28-10 at 10; 28-9 at 48; 28-12 at 3, 9 (expert report stating that Enokenwa's tactic was consistent with LVMPD's Use of Force policy).) A person is "obstructive" if "uncooperative [or] not complying with an officer's commands." (ECF No. 28-9 at 9.) The third *Kingsley* factor—whether Enokenwa attempted to temper or limit the use of force—also favors Enokenwa. He used officer presence, gave verbal instructions, and pantomimed instructions before using force. Finally, the fourth and fifth *Kinglsey* factors balance in Enokenwa's favor, because Enokenwa did not know whether Plaintiff was booked for a violent crime, and he was responding to Plaintiff's resistance and

perceived threat. Defendants concede that the second factor weighs in favor of Plaintiff, because Plaintiff was injured. (ECF No. 28 at 23.) In light of this evidence, the Court finds that Defendants have met their initial burden of showing that there is no dispute of material fact that the force used was objectively reasonable under *Kinglsey.*

Turning to Plaintiff, Plaintiff cites the wrong legal standard and does not address the *Kingsley* factors. Plaintiff argues the force was objectively unreasonable. He states that he was seated in a chair and therefore posed no physical threat. (ECF No. 30 at 31-32.) Plaintiff offers a Use of Force report involving CO Enokenwa from the day prior to Plaintiff's arrest, and the Use of Force Report following his incident with Enokenwa. (*Id.* at 32-33 (citing ECF No. 30-13); ECF No. 30-12.) Plaintiff offers LVMPD policies and states that the force "in fact violated LVMPD policies because it caused serious injury to Plaintiff." (ECF No. 30 at 31-31 (citing to ECF No. 30-3 (photo of Plaintiff's injury)).) Lastly, Plaintiff argues that there is a dispute of material fact because his use of force expert, Chuck J. Rylant, opines that "the force used was excessive." (ECF No. 30 at 33 (citing ECF No. 30-21 at 7 ("Officer Enokenwa's use of force was not objectively reasonable.")).)[11]

Construing this evidence under the *Kingsley* factors in the light most favorable to Plaintiff, the Court cannot find that Plaintiff has met his burden on summary judgment. The first factor does not cut in Plaintiff's favor. Plaintiff argues that Enokenwa used more force than necessary because he failed to de-escalate, citing the Use of Force[12] report. But the Use of Force report ultimately found that "no excessive force was used during the incident" and "the [officer's] actions prevented possible escalation of [Plaintiff's] resistance." (ECF No. 30-12 at 10.) As to the second *Kingsley* factor, Plaintiff repeatedly

---

[11]The Court does not discuss Plaintiff's expert testimony because it is not relevant to the Court's analysis under the *Kingsley* factors. Even if it was, it is unclear whether the opinion is admissible given that it appears to go to an ultimate issue of liability. *See United States v. Diaz*, 876 F.3d 1194, 1196-97 (collecting cases and explaining that an expert witness cannot give an opinion as to an ultimate issue of liability).

[12]The Court declines to review the Use of Force report dated July 19, 2024 (ECF No. 30-13) because it is not germane to the relevant analysis under the *Kingsley* factors.

states that Plaintiff sustained a “serious injury,” (ECF No. 30 at 10, 14, 31, 32, 33), but the only evidence Plaintiff points to is an image[13] of Plaintiff with a laceration (ECF No. 30-3). The third factor—whether Enokenwa attempted to temper or limit the amount of force—also does not cut in Plaintiff’s favor. Plaintiff argues that because he was injured, Enokenwa violated LVMPD policy. But this is nonsensical and unsupported by the record. Plaintiff concedes that that he was “low-level obstructive” under LVMPD’s Use of Force policy. (ECF No. 30 at 31.) CCDC policy permits takedowns for obstructive subjects, and while takedowns are “not likely to cause injury,” as Defendants explain in their Motion, “CCDC’s use of force techniques are designed to minimize injury but cannot guarantee no injury will occur.” (ECF No. 28 at 8.) As to the fourth and fifth factors, Plaintiff argues unconvincingly, without citing to any authority, that he was seated, therefore he “posed no physical threat.” (ECF No. 30 at 31.) Lastly, as described above, Plaintiff conceded that he resisted the officer by pretending not to understand Enokenwa’s instructions.

In sum, the Court finds that Plaintiff has failed to meet its burden of demonstrating that there is a genuine issue of material fact as to whether Enokenwa’s use of force was reasonable. Accordingly, the Court finds that Defendants are entitled to summary judgment as to Plaintiff’s first, second, and third claims.

### C. *Monell* Liability Claim

Plaintiff asserts a *Monell* failure to train claim, alleging that LVMPD officers were involved in an illegal policy, practice, custom or procedure of using plainclothes officers to create encounters so that uniformed officers could falsely detain and arrest an individual, and the LVMPD failed to train or supervise its officers on proper search and seizure law. (ECF No. 22 at 14-16.) Defendants assert that Plaintiff’s claim fails as a matter of law because Plaintiff pleads on information and belief and can only point to

[13]The Court notes the LVMPD Use of Force Report indicates that the “wound was superficial and did not require stitches” and Plaintiff denied pain medication (ECF No. 30-12 at 7); and Plaintiff’s Supplemental Disclosure of Expert Witnesses discloses that Dr. Daniel McBride and Dr. Nitin Engineer will testify as to Plaintiff’s diagnosis of “closed head injury/laceration” (ECF No. 28-15 at 3, 7).

Menon's isolated actions. (ECF No. 28 at 26-29.) Plaintiff counters that his evidence demonstrates more than mere speculation. (ECF No. 30 at 34-35.) The Court agrees with Plaintiff.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). *Monell* instructs that to impose liability on a municipality or a subdivision of the municipality under § 1983, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). "A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989). The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evinces a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. at 389. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thomson*, 563 U.S. 51, 61 (2011) (quoting *Bryan Cty.,* 520 U.S. at 410). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.*

Plaintiff offers his own deposition testimony that he could tell the Plainclothes Officers were trying to target him because they were "zooming right straight at [him]" and that he brought his elbows up because he "knew they were going to try to push [him]." (ECF No. 30-14 at 34, 36.) Plaintiff also offers deposition testimony from LVMPD Rule

30(b)(6) designee, Brandon Oris, who acknowledged that Plaintiff's case, like in one of Menon's instances of using unlawful tactics to detain people absent reasonable suspicious or probable cause, was similar in that the only basis for Plaintiff's arrest was an officer's report of the contact. (ECF No. 30-4 at 33-34.) Oris also testified that LVMPD reviewed cases in which Sergeant Menon and his squad were involved, but did not conduct a broader investigation because "there was never any allegation nor were we aware of any other instances that were similar to it that warranted investigation." (*Id.* 31-33.)

Defendants argue[14] that Plaintiff's failure to connect a single officer to Menon is fatal to his claim under *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). In *Blankenhorn*, the Ninth Circuit affirmed the district court's grant of summary judgment as to the plaintiff's failure to train claim because plaintiff's evidence focused exclusively on the actions of one defendant officer and "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." *Id.* at 484-85. But Defendants fail to offer any authority that Plaintiff must link the Arresting Officers to Menon for a plausible *Monell* claim. Moreover, while Plaintiff does not point to robust evidence of a pattern of constitutional violations, unlike the plaintiff in *Blankenhorn*, Plaintiff points to the actions of more than one officer: he names the Defendant Arresting Officers and Menon. Viewing all facts and evidence in the light most favorable to Plaintiff, a reasonable juror could find that the LVMPD was on notice that Menon was engaged in unlawful arrest

---

[14]Defendants additionally fault Plaintiff because Plaintiff's expert "refused to criticize the Arresting Officers' arrest and/or LVMPD." (ECF No. 28 at 28.) They purport to quote Plaintiff's expert, citing to "Pltf's Expert Supplemental Report, Ex. N." (ECF No. 28-15). However, the Court reviewed the exhibit and cannot find this quotation contained therein. Moreover, the Court finds this argument unpersuasive: the Court does not follow how Plaintiff's expert testimony as to excessive force cuts against Plaintiff's *Monell* claim simply because the expert did not opine as to it.

Additionally, the Court instructs Defendants to consult the Local Rules when citing to exhibits. *See* LR IA 10-3(c) ("[P]age numbers must be referenced when an exhibit or attachment is cited.")

tactics but failed to investigate beyond Menon[15] and his squad, or change its training, and Plaintiff was subsequently arrested in a similar manner by different officers.

Accordingly, the Court finds that Plaintiff has provided evidence showing that there is a material issue of fact as to whether LVMPD was deliberately indifferent for the purpose of *Monell* liability. The Court finds that Defendants are not entitled to summary judgment as to Plaintiff's *Monell* claim.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 28) is granted in part and denied in part. It is granted as to Plaintiff's section 1983 excessive force claim, excessive force under the Nevada Constitution claim, and state law battery claim (claims one, two and three). It is denied as to all other claims.

The Court refers this case to the Magistrate Judge to conduct a settlement conference. The proposed joint pretrial order will be due within 30 days from the settlement conference in the event settlement is not effectuated.

DATED THIS 12th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

[15]The Court notes, though Plaintiff does not raise this in his Response, that Sergeant Savino testified that he was never interviewed during the Menon investigation. (ECF No. 28-3 at 29.)